IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GARY LAMONT HOLT, JR.,            )
                                  )
         Plaintiff,               )
                                  )
                                  )
vs.                               )    CASE NO. 3:09-01154
                                  )    JUDGE CAMPBELL/KNOWLES
                                  )
                                  )
DAVIDSON COUNTY SHERIFF'S         )
OFFICE, and ABL FOOD COMPANY,     )
                                  )
         Defendants.              )

# REPORT AND RECOMMENDATION

On April 18, 2011, Judge Campbell entered an Order stating in part as follows:

> The final Report and Recommendation (Docket No. 86) to which
> Plaintiff has filed Objections, recommends the Defendant ABL's
> Motion for Summary Judgment be granted. Pursuant to 28 U.S.C.
> § 636(b)(1), Fed. R. Civ. P. 72(b)(3) and Local Rule 72.03(b)(3),
> the Court has reviewed *de novo* the Report and Recommendation,
> the Objections, and the file. The Report and Recommendation is
> rejected and the Court recommits the case to the Magistrate Judge
> to consider Plaintiff's Objections (Docket No. 90). The Magistrate
> Judge shall then file a Report and Recommendation addressing in
> detail Plaintiff's First Amendment claim for injury to his
> constitutional right and any related *respondeat superior* issues.

Docket No. 91, p. 1-2.

This is a pro se, in forma pauperis action filed by a prisoner in the custody of the Tennessee Department of Correction. Plaintiff's Statement of Facts in his Complaint states, in its entirety, as follows:

> Civil rights were violated due to request of kosher diet due to religious beliefs and was met with intimidation & retaliation and threat of retaliation on several occasions per Exhibits A-Z.

Docket No. 1, p. 5.

Plaintiff initially sued the Davidson County Sheriff's Office and ABL Food Management, Inc. Docket No. 1. Plaintiff's claims against the Davidson County Sheriff's Office have been dismissed. Docket Nos. 80, 91. Plaintiff was housed at the Hill Detention Center ("HDC") from August 20, 2009 to approximately October 27, 2009. Docket No. 50-1, p.7, 42.

In the previous Report and Recommendation, the undersigned recommended that Plaintiff's claims against ABL be dismissed for three reasons: (1) the allegations of the Complaint are conclusory, lack specificity with regard to any details about the alleged violation of his rights, and failed to state a claim upon which relief can be granted; (2) Plaintiff did not suffer any physical injury and, therefore, cannot recover for any mental or emotional injury or for his frustration; and (3) Plaintiff cannot sustain his claims against Defendant ABL because § 1983 does not permit the imposition of liability based upon *respondeat superior*. Docket No. 86, p. 9.

Plaintiff submitted an Objection to the referenced Report and Recommendation. The body of that Objection states in relevant part as follows:

> The Magistrate R and R missed the guise of Plaintiff complaint, Plaintiff has alleged a United States Constitutional violation of his First Amendment rights and is not required to show a physical injury.
>
> Plaintiff filed Grievance #152210 concerning religious diet, it was approved pursuant to Grievance Response form. Grievance Response Form/Grievance No. 152209 investigating officer V.

> Dulin stated "after it leaves ABL custody we have no control",
> Defendant ABL was responsible to ensure that Plaintiff received
> his religious diet. (See Exhibit B attached to original complaint.)
> This is also supported by Exhibits C, D, F, G and H.
>
> Plaintiff's inmate grievance form K states in part that Plaintiff had
> filed two inmate grievances on Defendant ABL concerning his
> religious diet. Plaintiff's collective original exhibit state a claim
> for First Amendment Constitutional right violations.
>
> It should be noted that investigating officer V. Dulin contacted the
> ABL manager concerning Plaintiff's inmate grievance concerning
> his religious diet.
>
> Lastly, the deposition taken of Plaintiff was filled with errors and
> should be rejected by the Court.

Docket No. 90, p. 1.

Since Judge Campbell's Order was entered prior to Defendant's filing a Response to Plaintiff's Objections, the undersigned gave Defendant the opportunity to file a Response to those Objections. Docket No. 93. Defendant subsequently filed its Response (Docket No. 97), and Plaintiff later filed a Reply to Defendant's Response (Docket No. 98).

Despite Plaintiff's statements in his Complaint and his Objection, the thrust of his claims against Defendant is unclear. His Complaint appears to allege only that he requested a kosher diet because of his religious beliefs, and his request "was met with intimidation & retaliation and threat of retaliation on several occasions." In support of this statement, Plaintiff cites Exhibits A-Z to his Complaint. These Exhibits consist of grievances completed by Plaintiff; grievance response forms; two documents headed "DCSO JMS Case Note Details – 47058 Holt, Gary L.," one dated September 30, 2009, and the other dated September 28, 2009; a document headed "DCSO JMS Inmate Special Diet – 478058 Holt, Gary L." dated September 18, 2009; and a "Counselor Request Form" dated October 13, 2009. It is clear, however, that not all of these

3

Exhibits relate to Plaintiff's concerns about his kosher diet. Some of them relate to his allergy to citrus. *See, e.g.,* Exhibit B. Others relate to a complaint about getting boiled eggs instead of tuna, and state, "I'm not a vegetarian why I'm not receiving full course meal." Ex. R. Some relate to Plaintiff's plans to file a lawsuit. Ex. S, W, X, Z.[1]

In his Objection, Plaintiff mentions 6 specific Exhibits: B, C, D, F, G, H, and K. The Court will discuss these Exhibits seriatim.

Exhibit B is a "Grievance Response Form," dated September 22, 2009, that references Grievance No. 152209. Unfortunately, neither Plaintiff nor Defendant has filed a copy of Grievance No. 152209. The "Response" in the Form states as follows:

> In response to your grievance when your diet sack is prepared and sent out it is with your correct diet in it. After it leaves ABL custody we have no control. I have talked to the manager and your diets will be correct and they will also be labeled.

*Id*.

The Response also includes a handwritten "Appeal," which states as follows:

> I received a grievance response dated Sep. 22, 2009, No. 152209 from V. Duling in reference to a grievance I filed about my diet sacks. The response stated that the diet will be correct & labeled. This has yet to be done as I am still receiving an orange in the same sack as my sandwich. I am allergic to citrus & there is a risk of cross-contamination.

*Id*.

Other information in Plaintiff's Exhibits indicates that Plaintiff is allergic to citrus. It is, therefore, unclear how Exhibit B relates to Plaintiff's claim of being denied a kosher diet.

Exhibit C is an "Inmate Grievance Form," signed by Plaintiff on September 23, 2009.

---

[1] Exhibit Z, and "Inmate Grievance Form," is not signed by Plaintiff, nor is it dated.

The "Details" section of that grievance states:

> Mrs Hail
> I am Hebrew Israelite of y'srael of "yah" Cultural Center 933
> Warren Street. Nash/Tn. 616-578-3967 I seen Mrs Gray 9-17-09
> 15:19. I ask for Kosher Deit. Now she gave it to me but only for a
> day Now I was already on. Nutritional/support and I am allergic to
> citrus After I seen her I was on no Deit which I don't that she did
> on purpose [*sic*]. the thing I want to no is how she determan if you
> not what you say you are. I thought I andwser all her question
> Right? thank you

Docket No. 1-1, p. 3.[2]

Exhibits D, F, G, and H all relate to the same incident that occurred on September 29, 2009. While there are slight differences in the language of these grievance forms, the essential details are set forth in Exhibit D as follows:

> ABL worker Junior came to dinner room area and told me he
> didn't give a dame what kind of paperwork I had he going by what
> on his sheet. *I understand* but he did have to embarrass me [*sic*]
> the Lt seen what was going on, I felt very scared and intimidated
> by what was happen, other Cos was crowed around me I feel like
> retaliation may come behind this Thank you.

---

[2] In his deposition, Plaintiff identified Mrs. Gray as "Chaplain Gray," and stated that she was not an employee of Defendant ABL. Docket No. 50-1, p. 19. When he discussed Exhibit C in his deposition, he stated in part:

> Yeah, well, it says I seen her and I was the only – I was on – on a
> diet which I don't – I don't – that she did not – did she – I don't
> think that she did it on purpose, but – because I thought she had
> took me off the nutrition support too.

*Id.*

Plaintiff also admitted that ABL "would only go by what the Chaplain enters in the system." *Id.*, p. 24.

5

(Emphasis added.)

The Details section of Exhibit K states:

> I went to Mrs. Patterson office. I told her the problems I was haven with my deit  I filed 2 grievance against ABL and wrote one to you.  She took both of them and told me I should not file cause I might cause retaliation  The she said if my tray this morning didn't have pork and on it what's wrong the she said what's is a kosher breakfast  I said I eat like this at home  She said I was not at home. Why she questioned me again about my religion when I've already been approved.

Mrs. Patterson is identified in Exhibits E and Z as a "case manager."  Presumably, she was not an employee of Defendant ABL.

To the extent that Plaintiff is attempting to claim that he was denied a kosher diet and that such denial violated his First Amendment right to practice his religion, his claims are governed by *Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010).  In *Colvin*, Plaintiff had previously been on a kosher meal program at the penal institution in which he was housed.  Plaintiff was transferred to another institution, and he requested that he maintain the same dietary status.  Officials at his new institution initially denied him kosher-meal status, erroneously believing that he was not approved for the program and that he was a Muslim.  As the Court stated, "Colvin was mistakenly denied kosher-meal status for 16 days."  While plaintiff in *Colvin* sued a number of Defendants, he also sued the food service director and the assistant food service director, whom he identified as having been actively involved in serving him nonkosher food items.  605 F.3d at 288, 293.  Those two defendants apparently were employees of the institution.  With regard to Plaintiff's claims against those Defendants, the Court stated in relevant part as follows:

> [Colvin] contends that [the two defendants] on multiple occasions violated the policy by mistakenly serving him nonkosher food.  In evaluating this claim, the magistrate judge found dispositive the

6

> fact that any mistakes in serving Colvin nonkosher food were "isolated incidents," that there was no evidence that the [institution] staff was intentionally serving him nonkosher items, and that, after each incident, the [institution] staff addressed Colvin's complaints and worked to correct their errors. The district court agreed.
>
> These findings are not erroneous. Because Colvin has asserted only isolated incidents of [these two defendants] serving him nonkosher food, and because these incidents are not sufficient to sustain his claim, we find no error in the district court's ruling.
>
> . . .
>
> In addition, [the institution] presented evidence showing that, pursuant to [institution] policy, had Colvin alerted [institution] food-service workers to the fact that he received nonkosher items when his food was being served (rather than later filing grievances), such items could have been promptly replaced with kosher items.
>
> Nor is there any evidence that the isolated mistakes were willful. *See Gallagher v. Shelton,* 587 F.3d 1063, 1070 (10th Cir. 2009) (affirming the dismissal of an inmate's claim that kosher utensils were contaminated because, despite evidence that prison officials might have "imperfectly implemented the kosher requirements or were even negligent," there was "no basis to conclude that any of the defendants deliberately contaminated the kosher utensils"). Given the isolated nature of the nonkosher food service and the lack of any evidence indicating deliberate violations of [the institutions's] kosher-meal program, [the two defendants] are entitled to summary judgment on Colvin's claim.

As discussed above, Plaintiff's Complaint does not specifically allege that he was denied a kosher diet, and he certainly has presented no factual support for that proposition in his Complaint. Some of the grievances Plaintiff has submitted do relate to his not receiving a kosher diet.[3] Defendant has also filed a number of documents headed "Inmate Grievance Report,"

---

[3] The Exhibits Plaintiff submitted with his Complaint are not in a form required by Rule 56, but the Court will consider them.

which address the grievances that Plaintiff filed. Docket No. 50-2, p. 16-25. These forms indicate that, on September 17, 2009, a grievance was received from Plaintiff with the following description:

> "I have ask several times to see the chaplain about Kosher Diet. I went to the case manager but this has not been done yet."

Docket No. 50-2, p. 17.

The investigating officer is noted to be "sgray," and the Response states as follows:

> Chaplain Gray met with I/M Holt, Gary about a religious diet on 9-17-2009. The request is approved. I/M's request was given to chaplain on 9-1-2009, but due to chaplain being out of office, this request was not answered until today. We are sorry for the delay.

*Id*.

Plaintiff stated in his deposition that September 17, 2009, was the first and only time he talked with Chaplain Gray about his kosher diet.[4] Docket N o. 50-1, p. 32. For reasons that are not explained in the record, it appears that Plaintiff received his kosher diet for that one day, September 17, 2009, but it was discontinued thereafter. *See* Ex. P. It was, however, reinstated on October 2, 2009. Docket No. 50-2, p. 18, 20. But Plaintiff apparently made a complaint on October 9, 2009, about not getting anything to replace tuna on his tray, and he complained about getting boiled eggs.[5] Docket No. 50-2, p. 22. The Response section of the Inmate Grievance Report dated October 9, 2009, states:

> In response to your grievance we have no information on you

---

[4] It is unclear why he waited almost a full month after he was first incarcerated at HDC on August 20, 2009 to inquire about a kosher diet.

[5] Once again, it is unclear whether this grievance has anything to do with Plaintiff's kosher diet.

8

> requiring any kind of special diet needs. It is not in the system.
> Therefore we are serving you accordingly. Please see medical to
> update your info.

*Id.*

The date of his last two grievances was October 17, 2010, although it is not clear that these grievances relate to his kosher diet. *See* Exhibits X, Y.

Plaintiff has made no allegation that any failure to receive a kosher diet was the result of willful actions by ABL or its employees. In fact, Plaintiff admitted several times during his deposition that he understood that ABL had to provide his meals based upon HDC's dietary records and plan. Docket No. 50-1, p. 23, 24, 26. He further stated that he understood "that the processing of religious meal preference requests is a function of HDC and does not involve ABL Food Management." *Id*., p. 32. He stated in his grievances regarding the incident with "Junior," that he understood that Junior had to go by what was on his sheet, regardless of what "paperwork" Plaintiff had. Ex. F, H.

The first and only time Plaintiff requested a kosher diet from Chaplain Gray was on September 17, 2009, and Plaintiff testified that he knew the Chaplain would have to approve any request for a religious diet. Docket No. 50-1, p. 32. While the record is somewhat unclear, he may have started receiving a kosher diet on October 2, or he may not have received his kosher diet for the remainder of the time he was housed at HDC. Assuming the latter, he would not have received a kosher diet for approximately 40 days after he requested it. While Plaintiff may have filed some grievances about his kosher diet during this time period, he apparently never sought another meeting with Chaplain Gray to advise her of the problem.

The *Colvin* Court also focused on the fact that the institution officials had addressed plaintiff's complaints and worked to correct their errors. Defendants in *Colvin*, however, were

9

employees of the institution.  In the case at bar, ABL is a contract food services provider.  The grievances Plaintiff filed would necessarily have been directed to jail officials, not ABL employees, because ABL provided meals based upon HDC's dietary records and plans.

Based upon the principles set forth in *Colvin*, therefore, Defendant ABL is entitled to a judgment as a matter of law.

As discussed above, Plaintiff also claims that his request for a kosher diet "was met with intimidation & retaliation and threat of retaliation on several occasions per exhibits A-Z." Docket No. 1, p. 5.  The Court will, therefore, analyze Plaintiff's retaliation claim.[6]  As the Sixth Circuit has stated:

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a casual connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter,* 175 F.3d 378, 394(6th Cir. 1999)

The Court will assume that Plaintiff was engaged in protected conduct in requesting a kosher diet and in filing grievances concerning his kosher diet.  Plaintiff cannot, however, meet the second element for a retaliation claim.

Many of the grievances and responses have nothing to do with retaliation.  Only 10 of the Exhibits could possibly be construed as setting forth a claim of retaliation – Exhibits D, F, G, H, K, M, N, T, U, and V.

---

[6] While this discussion may be beyond the scope of Judge Campbell's Order, the undersigned deems it appropriate to discuss this issue.

Exhibits D, F, G, and H concern the same incident, and have been discussed above. They relate to the incident involving ABL employee "Junior" that occurred on September 29, 2009. Plaintiff's description of that incident reflects that he was embarrassed and intimidated, not that he was the victim of retaliation. In fact, the statements in his Grievance Forms reflect the fact that he "feel[s] like retaliation may come behind this . . . ." Additionally, Plaintiff appears to state that he "understands" that Junior had to go by what was on his own sheet, and not what Plaintiff told him.

Exhibit K has been discussed above, and relates to Mrs. Patterson, who is a case manager, and presumably not an ABL employee.

Exhibits M and N both relate to the same incident that occurred on October 4, 2009. In those Exhibits, Plaintiff complains that he received two food trays with tuna, which apparently was not properly part of his kosher diet. An unidentified ABL worker said she would get him a tray for lunch but he did not receive a tray until it was almost dinner time. (The Court assumes that these facts relate to a possible claim of retaliation, because one of the grievance forms mentions the ABL employee Junior.)

The Details section of Exhibit T states:

> Every day their something wrong with my tray either theirs tuna or orange on my tray or it come hours later. embarrass by ABL worker Junior about tray say he only going by paperwork Still don't no his real name. Orange or tuna not replaced caused their no kitchen in HDC. I've been going threw this for 38 days. Delayed 38 days ask for grievance no. 152209 appeal haven't got it yet what's going on Thank you.

Exhibit T is dated October 9, 2009, and Plaintiff's reference to "38 days" is unclear. Insofar as the record shows, nothing happened on or around September 1, 2009, that would bear

upon any issues in this action.

The Details section of Exhibit U refers to an incident that occurred on October 10, 2009, in which an ABL worker Yameisha was watching Plaintiff while he was in the lunch room. The Details section of Exhibit U states as follows:

> On 10-10-09 I went to dinner and lunch notice ABL worker Yameisha watchen me in the lunch room when I came back to dinner she said she seen me trade some of my deit food for cake I didn't not do such of thing. She said if they caught me doing so they will take deit on top of that my deit was not their doing dinner. then She gave me Sardines and it Says No fish. So where in the rules it's Say if I don't like something on my tray that I got to eat it. What if Somebody won't to give me something. And he just gave it to me. Why is she watchen me eat my food?

The Details section of Exhibit V refers to a shakedown that occurred October 11, 2009. It states in relevant part:

> Since I been haven problems with deit and ABL I been threatened me officers been threatened me ask to see Lt. Cocract told me no. I feel like its because of civil right suit I said this in other grievance that I was scared intimidated took Id gave others back Id just pick me out of 7 [unreadable] did and had same thing this is retaliation and discrimination civil right package.

Plaintiff makes no allegation that Defendant ABL had anything to do with the shakedown, and the Court also notes that Plaintiff mailed his Complaint in the instant case to the Court on December 1, 2009 (Docket No. 1-2), almost two months after the instant grievance is dated.

It is clear from the 26 Exhibits Plaintiff has submitted that he was not deterred in his filing of grievances. Moreover, while Plaintiff avers that he was intimidated and scared regarding the incident with "Junior," that incident did not deter Plaintiff from continuing to file grievances about his diet and his concerns about retaliation. It is also clear that, even after he

12

was allegedly intimidated and retaliated against, he filed the instant lawsuit.

Thus, to the extent that Plaintiff is attempting to state a retaliation claim, Defendant ABL is entitled to a judgment as a matter of law.

With regard to respondeat superior, as discussed above, the only remaining Defendant in this action is ABL Food Management, Inc. Plaintiff has never sued any individual employees of ABL in this action. Even assuming that Plaintiff could state claims for denial of his right to practice his religion and/or retaliation, ABL cannot be liable for the actions of its employees under a theory of respondeat superior. *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996).

Finally, Plaintiff complains that his deposition "was filled with errors and should be rejected by the Court," and that "Plaintiff should be allowed to suppression of deposition plaintiff was not informed or aware of defendant motive to take disposition that day." Docket Nos. 90, p. 1; 98, p. 2. As this Court has previously observed, "nothing in Rule 30 provides for the suppression of depositions." *Coleman v. Miller*, 2010 WL 1408251 at *2. Moreover, Plaintiff's statement that he was not aware of Defendant's motive in taking the deposition must be rejected. At the beginning of the deposition, Defendant's counsel introduced herself and explained the deposition procedure, and the following exchange occurred:

> Q. Okay. There may be times when you think I'm prying or asking questions that are personal, and I don't mean to do that, but I'm trying to learn all that I can in the limited amount of time that we have today. Is that all right?
>
> A. Uh-huh. Now, I've got a question. *Anything I say, it will be held against me, it will hurt me on the case, because you are the defendant's lawyer.*
>
> Q. I am one of the Defendants' attorneys; right.

13

>    A.  Uh-huh.

Docket No. 50-1, p. 1 (emphasis added).

For the foregoing reasons, the undersigned again recommends that ABL's Motion for Summary Judgment (Docket No. 49) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                               E. Clifton Knowles
                                               United States Magistrate Judge